UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
WILLIAM VARELA,                                    :

                Plaintiff,          :          05 Civ. 6079 (SHS)(GWG)

    -v.-                                             :          REPORT AND
                                                  RECOMMENDATION
CRAIG DEMMON, et al,
                                  :

                Defendants.
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      William Varela brings this suit against Correction Officers Craig R. Demmon, Eric Hahn,

Paul Riccione, Michael Mrzyglod, and Robert Wahlquist, and Sergeant Thomas LaPier, alleging

that he was beaten in two separate incidents at the Green Haven Correctional Facility on March

25, 2004.  Varela alleges that the first beating, by Officers Demmon and Hahn, occurred in

retaliation for a prior complaint he made about Officer Demmon.  Varela also alleges that

Officer Demmon filed a false misbehavior report following the beating in retaliation for Varela's

having made the same complaint.  Varela further alleges that a second beating occurred at the

hands of Officers Hahn, Riccione, Mrzyglod, and Wahlquist and Sergeant LaPier as Varela was

being taken to the medical clinic, and that this second beating was also in retaliation for his

complaint about Officer Demmon.

      Defendants now move for partial summary judgment as to the retaliation claims.[1]  For the

---

[1]  See Notice of Motion for Partial Summary Judgment, filed Dec. 8, 2008 (Docket # 97); Statement of Undisputed Material Facts Pursuant to Rule 56.1, filed Dec. 8, 2008 (Docket # 95); Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment, filed Dec. 8, 2008 (Docket # 96); Declaration of Inna Reznik, filed Dec. 8, 2008 (Docket # 94) ("Reznik Decl."); Plaintiff William Varela's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment, filed Jan. 30, 2009 (Docket # 101) and Feb. 20, 2009 (Docket # 105) (under seal) ("Pl. Opp'n"); Declaration of Allon Lifshitz, filed Jan. 30, 2009
(continued...)

reasons that follow, the motion should be granted in part and denied in part.

I.       BACKGROUND

For purposes of deciding this motion for summary judgment, the Court assumes that the

admissible evidence presented by Varela is true and draws all inference in his favor.  See, e.g.,

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A.       Events Leading to Officer Demmon's Misbehavior Report

From October 2000 to May 2004, Varela was an inmate at Green Haven Correctional

Facility.  Varela Aff. ¶ 2.  While there, he was employed as a porter, which involved mopping

floors and discarding garbage.  Id. ¶¶ 4-5.  He was customarily permitted to take a shower after

his work shift ended.  Id. ¶ 5.  When he returned to his cell block on the evening of March 24,

2004, he told Officer Demmon that he wanted to take a shower.  Id. ¶ 7.  Officer Demmon

responded that he would "think about it" but did not let Varela shower.  Id. ¶ 8.  Later that

evening, Varela complained to the supervisor at his job, and the supervisor told Varela that he

would "look into the issue."  Id. ¶ 9.

The next day, March 25, Varela encountered Officer Demmon when Varela was

returning from work.  Id. ¶ 10.  Officer Demmon told Varela that he could take a shower.  Id.

¶ 11.  Varela tried to explain why he had been entitled to a shower the day before, and Officer

---

[1](...continued)
(Docket # 100) ("Lifshitz Decl."); Affidavit of William Varela, filed Jan. 30, 2009 (Docket # 99)
and Feb. 20, 2009 (Docket # 106) (under seal) ("Varela Aff."); Plaintiff William Varela's
Responses to Defendants' Statement of Undisputed Facts Pursuant to Rule 56.1, and
Counterstatement of Undisputed Facts, filed Jan. 30, 2009 (Docket # 102); Reply Memorandum
of Law in Support of Defendants' Motion for Partial Summary Judgment, filed Mar. 6, 2009
(Docket # 107); Defendants' Responses to Plaintiff's Counter-Statement of Material Facts, filed
Mar. 6, 2009 (Docket # 108).

Demmon became upset and expressed displeasure with Varela's having complained to Officer Demmon's superiors.  Id. ¶ 12.  Officer Demmon told Varela that he would show Varela "who the real boss is."  Id.  Varela then took a shower.  Id. ¶ 13.

      Varela went to make a phone call after his shower, which he was also customarily permitted to do at that time.  Id. ¶¶ 14-15.  He saw Officers Demmon and Hahn in a secluded area nearby.  Id. ¶ 16.  Although Varela was unaware of it, all other inmates on his block were locked in their cells (referred to as a "lock-in") because another inmate was caught with a tea bag that was suspected of containing marijuana.  Id. ¶¶ 16, 18, 26; Deposition of Scott Hahn (annexed as Ex. B to Reznik Decl.), at 155-64.  Before Varela could use the phone, Officer Demmon directed Varela to come to the secluded area where Officer Demmon was standing.  Varela Aff. ¶ 19.  Varela did so, at which point Officer Demmon swore at Varela, asking him what he was doing there.  Id. ¶ 20.  At no point did Officer Demmon direct Varela to return to Varela's cell, and Officer Demmon prevented Varela from returning by obstructing Varela's path.  Id. ¶¶ 21-22.

      Officer Demmon then physically assaulted Varela.  Id. ¶ 23.  Officer Hahn joined the assault.  Id. ¶ 25.  At no point did Varela strike Officer Demmon or any other correction officer. Id. ¶ 24.

      B.     Officer Demmon's Misbehavior Report

      On March 25, 2004, the same day as the alleged assault, Officer Demmon filed an Inmate Misbehavior Report alleging that Varela (1) violated a direct order from a correction officer; (2) assaulted a correction officer; and (3) violated lock-in procedures.  See Inmate Misbehavior Report (annexed as Ex. 4 to Lifshitz Decl.).  Varela was found guilty of the charges and was

3

sentenced to 365 days in the Special Housing Unit, as well as 365 days of lost package, phone, and commissary privileges.  See Tier III Hearing Transcript (annexed as Ex. 5 to Lifshitz Decl.), at 195-96.

      C.     Varela's Prior Disciplinary Infractions

Previously, in December 1997, Varela had been found guilty of harassment and creating a disturbance as the result of an argument that he had had with a teacher.  See Varela Aff. ¶ 30; Disciplinary Incident Summary (annexed as Ex. 3 to Varela Aff.).  In February 1998, he was found guilty of creating a disturbance in the mess hall and failing to follow a direct order.  See Varela Aff. ¶ 31; Disciplinary Incident Summary (annexed as Ex. 3 to Varela Aff.).  In February 2002, he was found guilty of having property where not authorized because he possessed hair clippers in the facility's yard.  See Varela Aff. ¶ 32; Disciplinary Incident Summary (annexed as Ex. 3 to Varela Aff.).  In March 2002, he was found guilty of violating a direct order, interference, and harassment because he had been "wearing extra clothing" and had insulted an officer.  See Varela Aff. ¶ 33; Disciplinary Incident Summary (annexed as Ex. 3 to Varela Aff.).

II.    APPLICABLE LEGAL STANDARDS

      A.     Law Governing Motions for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact "may reasonably be resolved in favor of either party" and thus should be left to the finder of fact. Anderson, 477 U.S. at 250.

4

In determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, the non-moving party "must come forward with 'specific facts showing there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001)).  In sum, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor."  Anderson, 477 U.S. at 256.

B.    Law Governing First Amendment Retaliation Claims

As was noted in this Court's prior ruling, see Varela v. Demmon, 491 F. Supp. 2d 442 (S.D.N.Y. 2007), the First Amendment protects prisoners from retaliation for engaging in protected speech, which includes making grievances regarding prison conditions, see Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (citing Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988)).  A prisoner asserting a retaliation claim must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted); accord

5

Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009).  The protected conduct must be "a substantial or motivating factor for the adverse actions taken by prison officials."  Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).

In the prison context, the Second Circuit has recognized "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated."  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).  Thus, courts "examine prisoners' claims of retaliation with skepticism and particular care."  Id.

III.   ANALYSIS

The defendants have moved for partial summary judgment with respect to the retaliation claims against all officers with the exception of the claim that the alleged beating by Officer Demmon was retaliatory.  We thus discuss (1) the retaliation claim relating to Officer Demmon's misbehavior report; and (2) the retaliation claim against all officers other than Officer Demmon with respect to the two alleged beatings.  We also address the defendants' arguments regarding qualified immunity and Eleventh Amendment immunity.

A.    Retaliation Claim Relating to Officer Demmon's Misbehavior Report

1.    Prima Facie Retaliation

Defendants on this motion do not contest that Varela engaged in protected speech through his complaint about Officer Demmon's conduct in denying him a shower the day before the alleged beating; nor do they contest that the filing of a false misbehavior report constitutes retaliation.  Instead, they argue that there was no causal connection between Varela's complaint and the allegedly retaliatory conduct.  See Def. Mem. at 8-13.  In evaluating the evidence

6

supporting a causal connection in prisoner retaliation cases, the Second Circuit has considered factors such as the temporal proximity between the speech and the retaliatory act, statements by the defendant concerning his motivation, whether the inmate was vindicated at the hearing on the matter, and the inmate's prior disciplinary record.  See Bennett v. Goord, 343 F.3d 133, 138 (2d Cir. 2003); Gayle v. Gonyea, 313 F.3d 677, 683 (2d Cir. 2002); .  Colon, 58 F.3d at 872-73.

Here, there is easily enough evidence for a reasonable jury to conclude that the misbehavior report was retaliatory inasmuch as the disciplinary action took place the next day, Espinal, 558 F.3d at 129 ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."), and Officer Demmon specifically stated to Varela that "he didn't appreciate the complaint [Varela] made to his superiors" and said "something about showing [Varela] who the boss is," Deposition of William Varela (annexed as Ex. 1 to Lifshitz Aff.), at 176, 178.[2]

Varela's prior disciplinary record is not serious or continuous enough to bar a reasonable jury from finding that the disciplinary action was motivated by Varela's oral complaint.  While Varela had a number of prior offenses over the course of the previous seven years, none included any assaults or acts of physical violence.  Additionally, the most recent of Varela's prior infractions occurred two years prior to the incident at issue.  See Varela Aff. ¶¶ 30-33.  Thus,

---

[2]  While, as noted by defendants, there is a dispute as to whether this statement was actually made, see Def. Mem at 10, we must accept Varela's version of events on this motion for summary judgment.  Defendants' argument that these statements should not be considered by this Court because they are "inadmissable hearsay," Def. Reply at 2, is meritless.  First, Officer Demmon's statement that he would show Varela "who the boss is" is being offered not for its truth but for the fact that Officer Demmon said it.  Second, to the extent offered against Officer Demmon, the statements are admissions by a party opponent, which are not hearsay.  See Fed. R. Evid. § 801(d)(2).

while a jury could reasonably find that this record made Varela's interpretation of events less plausible, a jury could also reasonably find that Varela's prior infractions were too attenuated and insufficiently severe to suggest that the misbehavior report was non-retaliatory. See Colon, 58 F.3d at 873 (allowing fact-finder to weight relevance of disciplinary record where "evidence is not sufficiently clear to resolve the issue of [plaintiff's] prior [disciplinary] record as a matter of law"). The fact that Varela was found guilty of the administrative charges similarly is not significant enough in the context of the other evidence to prevent a jury from finding retaliation.

In sum, Varela has met his burden of showing that a genuine issue of material fact exists as to whether retaliation was a substantial or motivating factor in Officer Demmon's decision to issue the misbehavior report.

### 2.     Alternative Basis for the Alleged Retaliatory Act

Defendants argue in the alternative that they are entitled to partial summary judgment because the misbehavior report would have been issued absent the protected conduct. See Def. Mem. at 11-13. Defendants could defeat Varela's retaliation claim if they could show that "as a matter of law, [plaintiff] would have been punished to the same extent regardless of the alleged retaliation." Gayle, 313 F.3d at 684. Defendants' argument, however, focuses only on the charges relating to Varela being outside of his cell – that is, not on the assault charge. But they have provided no evidence at all that Varela would have received the same punishment, which included 365 days in the Special Housing Unit, had he not been convicted of assaulting the officers.

Moreover, Varela disputes that he was in violation of any order or other rule regarding being outside his cell. While he concedes he was physically outside the cell during the lock-in,

8

he states that he was unaware this lock-in was occurring and asked to return to his cell as soon as he realized this was happening.  Varela Aff. ¶¶ 18, 22.  Thus, even for the non-assault charges, defendants have not shown that Varela would have received the same punishment for the conduct he admits to as he would have for the charge actually alleged.  See Inmate Misbehavior Report (annexed as Ex. 4 to Lifshitz Decl.) ("At this time I gave the inmate a direct order to lock in and at this time inmate charged at me . . . .").

      B.     <u>Claims against Hahn, Riccione LaPier, Mrzyglod, and Wahlquist</u>

Defendants argue that the retaliation claim should be dismissed as to Officers Hahn, Riccione, Mrzyglod, and Wahlquist and Sergeant LaPier because the plaintiff has failed to make any showing as to these defendants' knowledge of Varela's grievance.  See Def. Mem. at 7-8.  This portion of the motion should be granted as unopposed.[3]

      C.     <u>Qualified Immunity</u>

Defendants next argue that all of the retaliation claims should be dismissed because defendants are entitled to qualified immunity.  See Def. Mem. at 13-14.

The Second Circuit has held that:

> Defendants are entitled to qualified immunity if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.  A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.

---

[3]  Varela's attorneys appear to read defendants' motion as only relating to the retaliation claim pertaining to the misbehavior report.  See Pl. Mem. at 2 n.2.  However, defendants' memorandum clearly moves for partial summary judgment for any retaliation claim against these officers based on the assaults.  See Def. Mem at 7-8 (discussing Varela's First Amendment claims under the headings "Hahn's Alleged Retaliatory Assault" and "Riccione, LaPier, Mrzyglod and Wahlquist's Alleged Retaliatory Assault").

Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (citation, internal quotation marks, and brackets omitted).

As already discussed, the only remaining retaliation claim is the one against Officer Demmon.  Defendants make no argument regarding the availability of qualified immunity for this claim other than to argue that because plaintiff "do[es] not allege" a claim and because "there is no causal connection between" the misbehavior report and Varela's protected activity, defendants are entitled to qualified immunity.  See Def. Mem. at 13-14.  We have already rejected these arguments, however, and thus there is no basis on which to accord Officer Demmon qualified immunity.

        D.    Eleventh Amendment

Defendants also argue that they are entitled to Eleventh Amendment immunity.  Def. Mem. at 14-15.  However, because Varela concedes he is suing defendants only in their individual capacities, see Pl. Mem. at 15, the Eleventh Amendment is not implicated, see Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003) ("the eleventh amendment does not extend to a suit against a state official in his [or her] individual capacity, even when the conduct complained of was carried out in accordance with state law") (citation omitted) (brackets in original).

IV.    CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment (Docket # 97) should be granted in part and denied in part.  Specifically, the First Amendment retaliation claims related to Officers Hahn, Riccione, Mrzyglod, and Wahlquist and Sergeant LaPier should be dismissed.  The First Amendment retaliation claim against Officer Demmon remains.

### PROCEDURE FOR FILING OBJECTIONS TO THIS
### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to

serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any

responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon.

Sidney H. Stein, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any

request for an extension of time to file objections must be directed to Judge Stein.  If a party fails

to file timely objections, that party will not be permitted to raise any objections to this Report

and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).

Dated:  June 19, 2009
　　　　New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

11

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to

serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any

responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon.

Sidney H. Stein, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any

request for an extension of time to file objections must be directed to Judge Stein.  If a party fails

to file timely objections, that party will not be permitted to raise any objections to this Report

and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: June 19, 2009
       New York, New York

                                        _____
                                        GABRIEL W. GORENSTEIN
                                        United States Magistrate Judge

11